Angeline S. PROTOS, Plaintiff,

v.

VOLKSWAGEN OF AMERICA, INC., Defendant.

Civ. A. No. 84–1251.

United States District Court, W.D. Pennsylvania.

Aug. 27, 1985.

James W. Carroll, Jr., Pittsburgh, Pa., for plaintiff.

James P. Hollihan, Pittsburgh, Pa., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ZIEGLER, District Judge.

### I. *Findings of Fact*

(1) Plaintiff, Angeline S. Protos, filed a civil action for money damages and injunctive relief against defendant, Volkswagen of America, Inc., based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

(2) Plaintiff contends that she was disciplined, suspended and ultimately terminated by defendant due to her religious beliefs in violation of the 1972 amendment to Title VII, 42 U.S.C. § 2000e(j).

(3) Jurisdiction is based on 42 U.S.C. § 2000e–5(f)(3) and 28 U.S.C. § 1343(a).

(4) Plaintiff has satisfied all administrative prerequisites to the filing of this action, including the filing of written charges with the Equal Employment Opportunity Commission; an investigation by the agency; a finding of probable cause to believe that defendant violated Title VII by failing to accommodate plaintiff's religious beliefs; notice of the right to sue; and a timely complaint.

(5) Angeline Protos was hired by Volkswagen as an assembler at the New Stanton assembly plant on May 9, 1979.

(6) At all relevant times, plaintiff was a member of the Worldwide Church of God. One of the tenets of the church provides that a member shall not work on the Sabbath which extends from sunset on Friday to sunset on Saturday.

(7) The evidence preponderates that plaintiff's religious beliefs were sincerely held and consistent with the teachings of the Worldwide Church of God. Plaintiff documented her religious beliefs by providing letters to defendant from her minister on two occasions.

(8) The evidence preponderates that plaintiff was a competent, efficient, loyal and highly motivated employee of defendant until she was discharged on March 17, 1980.

(9) Plaintiff worked on the assembly line in trim 15, and performed the task of attaching four color coded wires of varying lengths to three connectors and a ground screw in the tail light assemblies of Rabbit automobiles. The evidence preponderates that the job could be learned in 15 minutes and performed in 30 seconds. We find that plaintiff has established by a preponderance of the evidence that the assignment was the least difficult and strenuous in trim 15.

(10) From the date of her employment, until August of 1979, plaintiff's regular work shift was from 6:30 a.m. to 3:00 p.m., Monday to Friday, and no conflict arose with her religious beliefs or observances. Plaintiff performed her work in a competent manner from Monday to Friday of each work week.

(11) In September, 1979, Volkswagen began to schedule mandatory overtime on Saturday which would require plaintiff to work in violation of her Sabbatarian beliefs. Plaintiff informed defendant that she would be unable to work on Saturdays due to the Sabbath.

(12) On September 29 and October 6 and 13, 1979, plaintiff was excused by her supervisor from work on Saturday due to her religious beliefs.

(13) On November 9, 1979, defendant advised plaintiff that she no longer would be excused from work on Saturdays. Plaintiff informed defendant that she would be unable to work on Saturday due to her religious beliefs and the teachings of the Worldwide Church of God.

(14) On December 10, 1979, defendant initiated disciplinary proceedings against plaintiff, pursuant to step 1 of the collective bargaining agreement, for failing to work on Saturday, December 8, 1979.

(15) On February 4, 1980, plaintiff was disciplined for failing to work on Saturday, February 2, 1980, and a one-week disciplinary layoff was imposed.

(16) On February 25, 1980, plaintiff was disciplined for failing to work on Saturday, February 23, 1980, and a two-week disciplinary layoff was imposed.

(17) On March 17, 1980, plaintiff was discharged for failing to work on Saturday, March 15, 1980.

(18) Plaintiff gave reasonable notice to Volkswagen prior to each absence, and plaintiff was willing to work on Sunday or make any adjustment in her work schedule to avoid the directive that she work on Saturday.

(19) The evidence preponderates that the absence of plaintiff from work on Saturday, and specifically on December 8, 1979, February 2 and 23, and March 1, 1980, caused no undue hardship to Volkswagen. The credible evidence establishes that defendant had available, at the same rate of pay, qualified employees who were able and did perform the assignment of plaintiff during her absence, without undue hardship or de minimus cost to defendant.

(20) The evidence preponderates that defendant had available, and utilized absentee relief operators and tag relief employees to replace plaintiff without affecting the efficiency, quality or production of trim 15 and the assembly line.

(21) Our finding that plaintiff sustained her burden of proving that Volkswagen discriminated due to her religious beliefs is based on the impressive array of credible witnesses presented by plaintiff. For example, Kenneth Holler testified that production continued without interruption on the days that plaintiff was absent with the use of one of the two absentee relief operators who were assigned to trim 15. In addition, each segment of the assembly line utilized the "A.R.O.s" from other segments of the line to cover the jobs of the various employees who were absent. In sum, the A.R.O.s were employed by defendant as substitutes for absent employees and the evidence preponderates that defendant was able to cover the absence of plaintiff on each of the relevant days without an undue hardship, indeed without any hardship whatsoever.

(22) Frank Pearsol was a particularly credible witness. He testified without any apparent bias to either party and impressed the court as an intelligent, articulate and loyal employee. Pearsol related that plaintiff performed the simplest job on the assembly line and the one to which the new employees were assigned. Hence, defendant was able to replace plaintiff on each Saturday without any hardship. Normal production continued and quality control was maintained, even when the assembly line operated at an accelerated pace.

(23) Volkswagen presented witnesses to meet its burden of production of evidence. *See Bellissimo v. Westinghouse Elec. Corp.,* 764 F.2d 175 (3d Cir.1985). However, we find that plaintiff has satisfied her burden of proof by the fair weight of the credible evidence. Defendant's evidence that the efficiency, production, quality and morale of trim 15 and the assembly line were undermined due to plaintiff's absence on selected Saturdays was not persuasive. First, we find that plaintiff's witnesses were more credible than the witnesses presented by defendant. Second, the exhibits of record undermine the testimony of defendant's witnesses. For example, contrary to the testimony of Daniel Antis, the area coordinator of trim 15, the documenta-

ry evidence fails to relate the problems of trim 15 to the absence of plaintiff. *See* Plaintiff's Ex. 12. Third, while defendant presented evidence of problems of unexcused absenteeism, we find that plaintiff's evidence preponderates that the end product was not affected by the absence of plaintiff because defendant was able, and did replace plaintiff with competent substitutes, without difficulty throughout the manufacturing process.

(24) Defendant's evidence that one employee complained because plaintiff was absent on one Saturday due to her religious beliefs fails to preponderate. There is no credible evidence that the complaint affected the routine operation of the assembly line or caused a hardship, de minimus or otherwise, to defendant.

(25) Plaintiff's evidence preponderates that defendant was able to utilize other absentee relief operators and tag relief operators on the assembly line to replace the A.R.O.s in trim 15, on the days on which an absentee relief operator was assigned to plaintiff's job, without undue hardship, and without any cost to defendant.

(26) The evidence preponderates that defendant was able to conduct an efficient and routine assembly line operation on the days on which plaintiff was absent due to her religious beliefs, despite the unexplained absences of other employees.

(27) The evidence preponderates that defendant was able and did train substitute employees to perform the job of plaintiff without additional time, expense or undue hardship.

(28) The evidence preponderates that defendant was able and did procure qualified substitute employees to perform the job of plaintiff without violation or deviation from the collective bargaining agreement between defendant and the United Auto Workers of America.

(29) The evidence preponderates that the excused absence of plaintiff from overtime work on Saturday would not violate any provision of the collective bargaining agreement between defendant and Local 2055 of the United Auto Workers. *See*

Paragraphs 139–141 of Defendant's Ex. A at 50–51.

(30) The evidence preponderates that Angeline Protos was the only employee from a work force of 5,000 who was disciplined, suspended and terminated for refusing to work overtime on Saturdays due to her religious beliefs.

(31) The evidence preponderates that plaintiff was subject to disparate treatment, i.e., discrimination, because she was discharged from a job for which she was qualified while others not in the protected class were retained.

(32) The evidence preponderates that defendant refused to excuse plaintiff from overtime assignments on the relevant Saturdays despite the fact that employees not in the protected class were granted excused absences from overtime assignments by management pursuant to paragraphs 140–141 of the collective bargaining agreement.

(33) The evidence preponderates that the nondiscriminatory reasons offered by defendant were pretextual because excused absences were granted to nonprotected employees from overtime assignments for various reasons pursuant to paragraphs 140–141 of the bargaining agreement and for jury duty, sickness, vacation, bereavement, education, public office, and others. *See* Stipulation at ¶ 3.

(34) The evidence preponderates that plaintiff would not have been disciplined, suspended or discharged but for her sincerely held religious beliefs.

## II. *Conclusions of Law*

(35) In 1972, Congress amended the Civil Rights Act of 1964 to require that an employer must reasonably accomodate the religious observances of an employee except when "undue hardship on the conduct of the employer's business" will result. 42 U.S.C. § 2000e(j) (1982).

(36) The reasonable accommodation language of the statute was taken from the guidelines of the Equal Employment Opportunity Commission then in effect, 29 C.F.R. § 1605.1(b) (1968), and the state-

ments of Senator Jennings Randolph are cited by plaintiff as useful:

MR. RANDOLPH. Mr. President, freedom from religious discrimination has been considered by most Americans from the days of the Founding Fathers as one of the United States. Yet our courts have on occasion determined that this freedom is nebulous, at least in some ways. So in presenting this proposal to S. 2515, it is my desire that I hope the desire of my colleagues, to assure that freedom from religious discrimination in the employment of workers is for all time guaranteed by law.

I am sure that my colleagues are well aware that there are several religious bodies—we could call them religious sects; denominational in nature—not large in membership, but with certain strong convictions, that believe there should be a steadfast observance of the Sabbath and require that the observance of the day of worship, the day of the Sabbath, be other than on Sunday. On this day of worship work is prohibited whether the day would fall on Friday, or Saturday, or Sunday. There are approximately 750,000 men and women who are Orthodox Jews in the U.S. work force who fall in this category of persons I am discussing. There are an additional 425,-000 men and women in the work force who are Seventh-day Adventists.

\*  \*  \*  \*  \*  \*

I say to the distinguished chairman of the Labor and Public Welfare Committee, who manages this bill, that there has been a partial refusal at times on the part of employers to hire or to continue in employment employees whose religious practices rigidly require them to abstain from work in the nature of hire on particular days. So there has been, because of understandable pressures, such as commitments of a family nature and otherwise, a dwindling of the membership of some of the religious organizations because of the situation to which I have just directed attention.

\*  \*  \*  \*  \*  \*

The term "religion" as used in the Civil Rights Act of 1964 encompasses, as I understand it, the same concepts as are included in the first amendment—not merely belief, but also conduct; the freedom to believe, and also the freedom to act.

I think in the Civil Rights Act we thus intended to protect the same rights in private employment as the Constitution protects in Federal, State, or local governments. Unfortunately, the courts have, in a sense, come down on both sides of this issue. The Supreme Court of the United States, in a case involving the observance of the Sabbath and job discrimination, divided evenly on this question.

This amendment is intended, in good purpose, to resolve by legislation—and in a way I think was originally intended by the Civil Rights Act—that which the courts apparently have not resolved. I think it is needed not only because court decisions have clouded the matter with some uncertainty; I think this is an appropriate time for the Senate, and hopefully the Congress of the United States, to go back, as it were, to what the Founding Fathers intended. The complexity of our industrial life, the transition of our whole are of employment, of course are matters that were not always understood by those who led our Nation in earlier days.

118 Cong.Rec. 705–06 (1972). According to plaintiff, the amendment is a rather clear expression Congress intended that employers accommodate the religious beliefs, observances and obligations of members of religious faiths which may differ from the mainstream of religious practices in this nation. The Supreme Court, however, is less enamored with the legislative history. *Trans. World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74–75 & n. 9, 97 S.Ct. 2264, 2271–72 & n. 9, 53 L.Ed.2d 113 (1977).

(37) In *Trans. World Airlines, Inc. v. Hardison*, the Supreme Court construed the 1972 Amendment to require an employer to accommodate the religious observances of employees unless such accommoda-

tion would contravene the provisions of a collective bargaining agreement or would cause the employer undue hardship. The only act of accommodation in this case is the excused absence of Angeline Protos from overtime work on Saturday during daylight hours. As in *Brown v. General Motors Corp.*, 601 F.2d 956, 958 (8th Cir. 1979), such an arrangement would not contravene a valid collective bargaining agreement.

(38) Several courts of appeals have discussed the burden of proof in a Title VII religious discrimination case as follows:

A plaintiff in a case makes out a prima facie case of religious discrimination by proving: (1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; (3) he or she was disciplined for failure to comply with the conflicting employment requirement.

*Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir.1985); *Turpen v. Missouri-Kansas-Texas R.R. Co.*, 736 F.2d 1022, 1026 (5th Cir.1984); *Brown v. General Motors Corp.* 601 F.2d 956, 959 (8th Cir.1979); *Anderson v. Gen. Dynamics*, 589 F.2d 397, 401 (9th Cir.1978). Although the Court of Appeals for the Third Circuit has not adopted the test as yet, we are confident that the rule represents an accurate statement of law.

■ (39) As rehearsed, Angeline Protos satisfied the burden of proving a prima facie case of religious discrimination by a preponderance of the evidence. She presented credible evidence that she has a sincerely held religious belief which conflicts with Volkswagen's requirement that an employee must perform overtime work on Saturday, during day light hours, unless excused by the Company. Although defendant attempted to show that plaintiff's belief is insincere, there is no credible evidence to support that view. The sincere and bona fide religious beliefs and observances of plaintiff cannot be challenged on this record. Plaintiff has met the test for religious sincerity set forth in *Lewis v. Califano*, 616 F.2d 73, 77–81 (3d Cir.1980).

(40) Plaintiff also has met the remaining prima facie requirements. She presented credible evidence that Volkswagen was informed of her beliefs prior to any absence from work or discipline by defendant. Further, it is not disputed that plaintiff would not have been disciplined, suspended or discharged but for her refusal to work overtime on the relevant Saturdays, and we have found that the absences were due to her religious beliefs. No other employee was treated similarly. Indeed, many employees were excused from overtime work for a variety of secular reasons.

(41) Volkswagen contends that, because Angeline Protos demanded a "guarantee" that she would be excused from all work on Saturdays following the overtime announcement of September 1979, plaintiff failed to present a prima facie case as a matter of law, citing *Jordan v. N. Carolina Natl. Bank*, 565 F.2d 72 (4th Cir. 1977). We disagree. First, in our judgment, the panel's opinion in *Jordan* misconstrues *Hardison* because, assuming an employee demands a guarantee of immunity from work on the Sabbath, an employer is required to reasonably accommodate the observance if it can be done without undue hardship, as here. Second, we believe that Judge Winter presented the better analysis in the dissent. And third, the subsequent decision of the Court of Appeals in *Brown v. General Motors Corp.*, 601 F.2d 956 (8th Cir.1979) is more in keeping with our view of the teachings of the Supreme Court.

■ (42) Volkswagen produced evidence to attempt to dispel the adverse inference created by the prima facie case of plaintiff to the effect that to accommodate plaintiff's religious beliefs would constitute an undue hardship. Defendant's witnesses testified that to excuse Angeline Protos from Saturday overtime would lead to inefficiency, lost production, poor quality and loss of morale.

(43) We have previously found that defendant's evidence was hotly contested and that plaintiff met her burden of proof by the weight of the credible evidence. We hold that plaintiff went forward with credi-

ble evidence which established that the nondiscriminatory reasons advanced by defendant were pretextual. *See Bellissimo v. Westinghouse Electric Corp.,* 764 F.2d 175 (3d Cir.1985).

(44) Plaintiff's evidence establishes that defendant suffered no economic loss when she refused to work overtime on Saturday. Angeline Protos was not compensated for the absence, and plaintiff was replaced by an employee, who was paid at the same rate of pay. Further, as rehearsed, plaintiff presented the more believable evidence that the efficiency, production, quality and morale of trim 15, and the entire assembly line remained intact during her absence. Plaintiff also established by convincing evidence that she was subjected to disparate treatment and that no employee in the nonprotected class was similarly treated. We hold that plaintiff has satisfied her ultimate burden of persuasion. *Dillon v. Coles,* 746 F.2d 998 (3d Cir.1984).

■ (45) Volkswagen's final contention appears to be that relief is inappropriate because the 1972 Amendment to Title VII is unconstitutional. We agree with defendant that the foregoing findings require resolution of the establishment clause question. *See Gavin v. Peoples Natural Gas,* 613 F.2d 482 (3d Cir.1980). However, learned minds have addressed the question and no appellate court has held that the act constitutes an establishment of religion in violation of the First Amendment. *See, e.g., Philbrook v. Ansonia Bd. of Education,* 757 F.2d 476, 487 n. 11 (2d Cir. 1985); Note, *Religious Accommodation,* 53 Fordham L.Rev. 839, 854–855 (1985). We perceive no reason to deviate from those wise teachings. *See also Estate of Thornton v. Caldar,* —— U.S. ——, ——, 105 S.Ct. 2914, 2918, 86 L.Ed.2d 557 (1985) (O'Connor, J., concurring).

(46) We have found that plaintiff has established by a preponderance of the evidence that defendant failed to reasonably accommodate the religious beliefs of plaintiff and further that defendant could have done so without undue hardship and at no cost. The credible evidence establishes that but for the illegal conduct of defendant, plaintiff would not have been discharged, and that the discharge was due to protected activity. We turn to the appropriate relief.

■ (47) The parties have stipulated that, if Angeline Protos had worked for defendant from March 17, 1980 to January 22, 1983, when she would have been laid off due to a reduction in defendant's business, she would have earned the sum of $49,495.25. Since we have found that defendant discriminated against plaintiff, we will award this sum as back pay because the evidence preponderates that plaintiff was unable to find alternate employment despite good faith efforts subsequent to her discharge.

(48) The parties have stipulated that, if Angeline Protos had worked for defendant from March 17, 1980 to January 22, 1983, she would have earned fringe benefits in the sum of $13,525.11, plus unemployment benefits during a production slowdown in the sum of $6,355. Since we have premised liability and causation on defendant, we will award this sum to plaintiff because the evidence preponderates that plaintiff was unable to find alternate employment despite good faith efforts subsequent to her discharge.

(49) We will award to plaintiff the sum of $4536 which represents the difference in the rate of unemployment compensation benefits which plaintiff received and that which she would have received if laid off on January 22, 1983 for economic reasons.

(50) Unemployment compensation benefits are not deductible from an award of back pay against a private employer in a Title VII action in this jurisdiction, *Craig v. Y & Y Snacks, Inc.,* 721 F.2d 77 (3d Cir. 1983), and there is no equitable reason to do so in this case. *See generally Dillon v. Coles,* 746 F.2d 998 (3d Cir.1984).

■ (51) The evidence preponderates, and the parties have stipulated that plaintiff would have been laid off effective January 22, 1983. While this interdicts the claim for back pay, plaintiff is entitled to be reinstated effective March 17, 1980, with full seniority rights retroactive to that date. 42 U.S.C. § 2000e–5(g) (1982). Rein-

statement is required under the facts of this case, although work is not available at this time. There is no likelihood of disharmony when plaintiff is returned to the work place.

(52) Judgment will be entered on behalf of plaintiff, Angeline S. Protos, and against defendant, Volkswagen of America, Inc., in the sum of $73,911.36. Reinstatement will also be ordered effective March 17, 1980, in a judgment order to be filed with the Clerk of Court. Counsel for plaintiff will be ordered to file a motion for counsel fees, with a supporting affidavit, within 10 days.