535 A.2d 1222

Wilma T. Monroe, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs October 13, 1987, to President Judge CRUMLISH, JR., Judge COLINS, and Senior Judge BLATT, sitting as a panel of three.

*Andrew F. Erba,* for petitioner.

*James K. Bradley,* Assistant Counsel, with him, *Clifford F. Blaze,* Deputy Chief Counsel, for respondent.

OPINION BY JUDGE BLATT, January 13, 1988:

Wilma T. Monroe (claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board) which denied her benefits pursuant to Section 402(b) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess. P.L. (1937) 2897, *as amended,* 43 P.S. §802(b) (voluntary termination without cause of a necessitous and compelling nature).

This case was previously before this Court, at which time the claimant raised numerous challenges to the Board's denial of benefits. Due to the inadequacy of the Board's findings, however, we were unable to review that decision. Accordingly, the case was remanded to the Board so that it could make the necessary findings.

On remand, the Board vacated its previous decision and made the following findings:

1. The claimant was last employed by Boyd's Men's Store, as a supervisor in the Layaway Department, for approximately four years, at a final pay rate of $6.00 per hour. The claimant's last day of work was April 3, 1984.

2. Claimant's performance as a supervisor had been excellent prior to October 1983, at which time the claimant became involved with a new religion.

3. After October 1983, the claimant's job performance deteriorated, in that she refused to follow the established employer rules. The claimant believed that the employer rules were in conflict with her religion.

4. The claimant had a day off on April 3, 1984, but went to work to discuss her job performance with her employer.

5. Claimant did not report a subordinate's violation of a policy of the company to the employer, because she believed the subordinate's job would be in jeopardy.

6. The employer had reprimanded the claimant at that time. This reprimand was not unjust or abusive. A verbal altercation ensued and claimant went home for the day.

7. The claimant returned only to pick up her paycheck two days later and never returned to work thereafter. She quit her job, because she felt that her job duties were in conflict with her religion.

8. The claimant also quit her job because of the employer's reprimand of April 3, 1984.

9. Claimant was not laid off or discharged, and continued work was available had claimant chosen to remain employed.

10. The claimant did not quit her job due to a cause of a necessitous and compelling nature.

11. The employer's work rules did not change from the time of the claimant's hire until her last day of work.

The Board thereafter denied benefits based on its conclusion that the claimant voluntarily terminated her employment because "her religious beliefs had conflicted with the employer's rules"[1] and because of a reprimand she received from her employer, which reasons the Board found not to be of a necessitous and compelling nature. This appeal followed.

The claimant initially contends that factual findings four through six are erroneous and that the reprimand that she received from her employer was abusive, as a matter of law, because it was based on her religious beliefs. Our review of the record, however, indicates that factual findings four and five are supported by substantial evidence in the form of the claimant's own testimony. And, although there is conflicting testimony as to the subject of the reprimand and its tone, in factual finding six the Board resolved the conflict against the claimant when it found that the reprimand was neither unjust nor abusive. Inasmuch as that finding is supported by substantial evidence, we are bound thereby, *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 378 A.2d 829 (1977), even though the claimant's testimony was to the contrary, *Geesey v. Un-*

---

[1] Although the Board, in finding of fact number seven, found that the claimant *"felt* that her job duties were in conflict with her religion,*"* in the Discussion section of its Opinion, the Board found an actual conflict when it stated that the claimant's "religious beliefs *had conflicted* with the employer's rules. . . ." (Emphasis added.) While we must once again caution the Board against the practice of making factual findings in the Discussion section of its Opinion, those findings are nonetheless sufficient to permit appellate review.

*employment Compensation. Board of Review,* 33 Pa. Commonwealth Ct. 376, 381 A.2d 1343 (1978).

The claimant also contends that a conflict between her sincerely held religious beliefs and the employer's rules constitutes cause of a necessitous and compelling nature for voluntarily terminating her employment. She further contends that, in denying her unemployment compensation benefits, the Board violated her right to the free exercise of her religion as guaranteed by the First Amendment of the United States Constitution.

Our scope of review, of course, is limited to determining whether or not constitutional rights were violated, an error of law was committed, or a necessary finding is unsupported by substantial evidence. *Wurster v. Unemployment Compensation Board of Review,* 102 Pa. Commonwealth Ct. 417, 518 A.2d 350 (1986). And, whether or not a claimant had cause of a necessitous and compelling nature is a legal conclusion subject to appellate review. *Taylor.*

In support of her contention that the Board violated her constitutional rights in denying benefits because she quit her job due to a conflict between her religious beliefs and the employer's rules, the claimant cites *Thomas v. Review Board, Indiana Employment Security Division,* 450 U.S. 707 (1981), and *Sherbert v. Verner,* 374 U.S. 398 (1963). In *Thomas,* the Supreme Court stated that:

> Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial.

*Id.* at 717-18. The Board, however, argues that *Thomas* and *Sherbert* are inapposite because in those cases, unlike in the case *sub judice,* the claimants were able to show that the employment condition violated tenets of their religions.[2] We disagree.

The First Amendment right to the free exercise of religion applies to *a sincerely held religious belief,* and we do not believe that this right is limited only to beliefs held by members of established religions. Moreover, neither the Board's findings nor the record give any indication as to whether or not the claimant was, in fact, a member of an organized religion. Accordingly, an actual conflict between one's sincerely held religious beliefs and his or her employment conditions may constitute cause of a necessitous and compelling nature for voluntarily terminating employment. *See Mikolayczak v. Unemployment Compensation Board of Review,* 94 Pa. Commonwealth Ct. 163, 503 A.2d 100 (1986). And, in determining whether or not such a conflict exists, "the Board may inquire into the sincerity of one's religious beliefs to determine whether these beliefs are in fact the reason that a claimant refused suitable work." *Id.* at 168, 503 A.2d at 103.

In *Mikolayczak,* the Board denied unemployment compensation benefits, concluding that the claimant's reason for terminating her employment was purely personal, rather than religious, because neither her job responsibilities *nor her religious beliefs* had changed subsequent to her initial acceptance of employment. In the case sub judice, however, the Board found that the claimant's religious beliefs had changed during the course of her employment (finding of fact number two),

---

[2] Although the record does not indicate whether or not the claimant's beliefs were grounded in any organized religion, she testified that she "accepted Jesus Christ as [her] personal saviour."

and that those beliefs conflicted with her employer's rules[3] (Discussion).

In the free exercise area, two threshold requirements must be met before particular beliefs may be accorded First Amendment protection. First, the beliefs

---

[3] With regard to the employer's rules, the claimant testified that:

QR: Alright. Did he tell you what you were doing that he wasn't pleased with? That he wasn't pleased about?

AC: Well I know that there was one situation where young men had given something [sic]. Well he had said that he had basically left a garment on the counter and he let it there and went back to get his coat and the person came and walked away with the garment. And, that morning the person told me and because I knew that that [sic], I figured that person was going to lose their [sic] job, which really I shouldn't have figured, but I did figure the person was going to lose their [sic] job and I held it. I didn't say anything to them about it.

QR: You didn't tell your supervisor?

AC: No.

. . . .

QR: Alright.

AC: But I went in and I started talking to him and I said to him, you know, basically what had happened. The change and you know, I just basically told him what was happening in the inside. Like I know there is an incident that in the store, there is such a thing as a B Box hand I broke it down and I said to him that alot [sic] of times you know, I can't go and take a garment.

QR: You banging. You'll interfere with the trans . . with the . . :

AC: Okay. I can't go and take the garment, you know, you know, [sic] just because a manager tells me that it is okay. I can't do that because, you know, taking some elses clothes.

QR: What is B Box?

AC: B-Box [sic] is basically where a salesmen [sic] will sell something. Okay. And, say the customer brings [sic] and they put a small deposit on the garment. Now,

avowed must be "sincerely held," and second, the beliefs must be "religious in nature, in the claimant's scheme of things." *Africa v. Commonwealth of Pennsylvania,* 662 F.2d 1025, 1030 (3d Cir. 1981). In determining whether or not a belief is sincerely held, we may not question the *truth* of a belief, but must determine whether or not that belief is truly held. Moreover, we must "avoid any predisposition toward conventional religions so that unfamiliar faiths are not branded mere secular beliefs." *Id.* at 1031. And, secular beliefs howev-

---

the customer, you know, if its a young boy, which, who will put maybe $25.00 on a $300.00 jacket. [sic] Which usually isn't expected but sometimes they will do it and what they will do they will put that deposit and apply it to the layaway and they will take the garment and they will put it back in. They won't hang it. They won't hang the garment with the layaway ticket on it. You know, just to see if the customer is going to come back and make more deposits on it. If the customer comes back and makes more deposits then they will hang the clothing as other clothing comes in. But in the meantime. . . .

. . . .

AR: Alright.

AC: Okay. I'm glad Ralph is here because he was present at . . . I don't know if he was present but I think that the salemen, okay, [sic] what happened the customer came in. [sic] I went to the salesman and I said to the salesman the customer is here for his clothing. And, the size that we need is not in stock. So he said to me well [sic] go down stairs in the basement and take somebody elses. And, I told him no. I'm not going to do it. I can't do it. I can't do that because it is wrong. And I remember him saying Ralph or something he said to Ralph on the floor [sic] and I just left the ticket on the counter out on the floor and I walked away because I wasn't going to do it. I couldn't do it. Now, I said if he could find another in stock or he did it that's him. But, I could not be responsible for doing that. And, I said. . . . [sic]

er virtuous and admirable, of course, do not fall within the ambit of First Amendment protection. *Id.* at 1034.

If it is determined that beliefs are sincerely held, then it must also be established that those beliefs are religious in nature. And, in *Africa,* the Court listed three indicia for determining the existence of a religion.

> First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters. Second, a religion *is* comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching. Third, a religion often can be recognized by the presence of certain formal and external signs.

*Id.* at 1032 (footnote omitted). If a claimant meets her burden of proving that her actions, *i.e.* quitting her job, were due to religious beliefs which were sincerely held, then she must also show that she informed her employer of those beliefs.[4] *See Protos v. Volkswagen of America, Inc.,* 615 F. Supp. 1513 (W.D. Pa. 1985).

In the case *sub judice,* the Board found that the claimant became involved with a new religion and that her job duties were in conflict with that religion. The Board, however, gave no indication as to what her beliefs were or how they conflicted with her job duties. Due to our inability to make factual findings and due to the Board's failure to make necessary findings on relevant issues, we are unable to determine, as a matter of law, whether or not the claimant's actions were motivated by "religious" reasons and thus within the ambit of First Amendment protection. We must, therefore, remand this matter to the Board for an evidentiary hearing and findings.

On remand, the Board must first determine the beliefs that the claimant actually held and whether or

---

[4] Our review of the Board's findings indicates that the claimant here did inform her employer of her religious beliefs.

not those beliefs were sincere, as well as religious (as opposed to secular) in nature. Findings are then necessary on the job requirements which the claimant believed to be in conflict with her religious beliefs. If the Board should determine that her beliefs were sincerely held and religious in nature, it must then determine whether or not there was an actual conflict between those *beliefs* and the employer's job requirements. And, if such a conflict exists, then the claimant is entitled to First Amendment protection, and the infringement on her belief, *i.e.* denial of benefits, must be subjected to strict scrutiny which can be justified only by proof of a compelling state interest. *Hobbie v. Unemployment Appeals Commission of Florida,* U.S. , 107 S.Ct. 1046 (1987).

Accordingly, the order of the Board is vacated and this matter is remanded for further proceedings in accord with this opinion.

ORDER

AND NOW, this 13th day of January, 1988, the order of the Unemployment Compensation Board of Review in the above-captioned matter is vacated and the record is remanded for an evidentiary hearing and additional findings with regard to the claimant's beliefs, her job requirements, and whether or not there was a conflict between the two.

Jurisdiction relinquished.