IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bonnie F. Kaite, : 
          Petitioner : 
  : 
  : 
      v. : 
  : 
Unemployment Compensation : 
Board of Review, :   No. 851 C.D. 2016
          Respondent :   Submitted:  November 4, 2016


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE JOSEPH M. COSGROVE, Judge


OPINION
BY JUDGE COSGROVE              FILED:  November 29, 2017


Bonnie Kaite (Petitioner) petitions for review of an April 28, 2016 Order of the Unemployment Compensation Board of Review (Board) which declared her ineligible for benefits under Section 402(e)[1] of the Unemployment Compensation Law (Law).  We reverse.

Petitioner began working for Altoona Student Transportation (Employer) on August 29, 2001.  In November 2015, she was notified by Employer that she would have to submit to a fingerprinting background check due to the enactment of a new regulation.[2]  Petitioner informed Employer it was against her

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e).

[2] Amendments to the Child Protective Services Law, 23 Pa.C.S. § 6301-6386, became effective July 1, 2015.  Section 6344(b)(3) requires certain individuals to submit a report of federal

religious beliefs to be fingerprinted and asked if she could submit to a different form of background check that did not involve fingerprinting. On December 22, 2015, Petitioner was suspended by Employer and told she could only return to work if she submitted to fingerprinting. Petitioner filed for unemployment compensation (UC) benefits but was determined to be ineligible by the UC Service Center under Section 402(e) of the Law.[3] Petitioner appealed the Notice of Determination and the Referee held a hearing at which Petitioner and her Union representative testified. The Referee issued a decision on February 26, 2016 in which he also concluded Petitioner was ineligible for benefits under Section 402(e). Petitioner appealed to the Board, which adopted the findings and conclusions of the Referee and affirmed the Referee's decision. Petitioner appealed[4] to this Court.

Petitioner presents the following issues on appeal:

(1) Did the Board err in concluding that Petitioner did not have good cause for violating Employer's fingerprinting requirement;

---

criminal history record information and the applicant must submit a full set of fingerprints to the Pennsylvania State Police for purposes of obtaining that report.

[3] Section 402(e) of the Law provides that *"[a]n employe shall be ineligible for compensation for any week…[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is 'employment' as defined in this act[.]"* 43 P.S. § 802(e).

[4] Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether constitutional rights have been violated, or whether an error of law was committed. *Emery Worldwide v. Unemployment Compensation Board of Review*, 540 A.2d 988, 989 n.2 (Pa. Cmwlth. 1988). Whether a claimant's conduct constitutes willful misconduct is a question of law reviewable by this Court. *Lee Hospital v. Unemployment Compensation Board of Review*, 589 A.2d 297, 299 (Pa. Cmwlth. 1991).

(2) Did the Board violate Petitioner's constitutional rights under the Free Exercise Clause to the First and Fourteenth Amendments of the United States Constitution when it denied Petitioner unemployment compensation benefits;

(3) Did the Board err as a matter of law when it determined Petitioner's beliefs are personal and not religious;

(4) Did the Board not support its determination that Petitioner's beliefs are personal instead of religious with substantial evidence; and

(5) Did the Board err in concluding Petitioner did not have good cause for violating Employer's fingerprinting requirement even though her religious beliefs are sincerely held?

Petitioner argues the Board erred in concluding she did not have good cause for violating Employer's policy. She testified that she believes fingerprinting is contrary to her religion and if she submits to fingerprinting she "will not get to go to Heaven because I'm marked – the mark of the devil." (Reproduced Record (R.R.) 31a-32a.) Petitioner based her beliefs on passages from the Bible and the preaching of her father, a Christian Evangelist. She argues she has a sincerely held religious belief which constitutes good cause for not complying with Employer's requirement.

In its April 28, 2016 order, the Board adopted and incorporated the Referee's findings and conclusions and affirmed the decision of the Referee. The Board found that Petitioner's good cause argument was not credible, that Petitioner's belief was personal and not religious, and the mere fact that Petitioner characterized those beliefs as religious did not constitute evidence of good cause.

3

The employer bears the burden of proving the existence of the work rule and its violation, and once the employer establishes that, the burden then shifts to the claimant to prove that the violation was for good cause. *Oliver v. Unemployment Compensation Board of Review*, 5 A.3d 432, 438 (Pa. Cmwlth. 2010). Where the state denies benefits because of conduct mandated by a religious belief, putting substantial pressure on a person to modify behavior and violate that belief, a burden upon religion exists. *Cassatt v. Unemployment Compensation Board of Review*, 642 A.2d 657, 659 (Pa. Cmwlth. 1994). The burden that a denial places on a claimant's right to free exercise must be sufficiently compelling to override the claimant's First Amendment rights. *Id.*

In *Southeastern Pennsylvania Transportation Authority v. Unemployment Compensation Board of Review (SEPTA)*, 420 A.2d 47 (Pa. Cmwlth. 1980), this Court affirmed a decision of the Board that an employee was entitled to unemployment compensation benefits when he was absent one day from work due to religious observation. The employee was a member of the Bethel Holy Commandment Church and observed a holy day every twenty-eight to thirty days. Two weeks before the holy day, the employee asked his employer to excuse him from work that day but received no response until a much later date, at which time the request was denied. The employee did not report for work on the holy day and he was discharged by his employer. The employee was granted benefits and the employer appealed. The issue before the Court was not whether the employer had the right to discharge the employee for his conduct but rather whether the Commonwealth was justified in reinforcing that decision by denying the employee benefits under the Law for the conduct. *Id.* at 49. The Court found that the denial of benefits was not justified.

4

In the matter *sub judice*, Petitioner is challenging the Board's determination that she did not have good cause for her violation of the fingerprinting requirement. Petitioner testified she was raised to believe that any marking on the hands or head is the mark of the devil and will prevent her from getting into heaven. (R.R. 31a-32a.) She stated she was "willing to do anything else they ask me to do with the exception of [fingerprinting] because I really do believe I won't get into heaven." (R.R. 31a-35a.) This Court has held that absence from work due to observation of a religious holiday constitutes good cause. *SEPTA*, 420 A.2d at 49. It is analogous here that Petitioner's refusal to submit to a requirement that is in opposition to her religious beliefs would also constitute good cause for violating Employer's policy.

Petitioner argues the Board violated her constitutional rights under the Free Exercise Clause of the First Amendment to the United States Constitution[5] when it denied Petitioner unemployment compensation benefits. The Petitioner states that the Board's decision on her eligibility to receive benefits is based on her unwillingness to violate the principles of her faith. She argues her sincerely held

---

[5] The First Amendment to the United States Constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

"The Free Exercise Clause of the First Amendment is applicable to the States through the Fourteenth Amendment…" *Commonwealth v. Parente*, 956 A.2d 1065, 1068, n.6 (Pa. Cmwlth. 2008).

The Fourteenth Amendment to the United States Constitution provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV §1.

religious beliefs conflict with Employer's requirement and making her submit to that requirement is an infringement on her First Amendment rights.

The United States Supreme Court has held that a conditioning of the availability of benefits upon an employee's willingness to violate a cardinal principle of her religious faith effectively penalizes the free exercise of her constitutional liberties. *Sherbert v. Verner*, 374 U.S. 398, 406 (1963).

In *Sherbert,* an employee was discharged by her employer because she would not work on Saturday which was the Sabbath Day of her faith. The employee applied for unemployment compensation benefits and was denied because the South Carolina Employment Security Commission found the employee's restriction upon her availability for work on Saturdays brought her within a provision of a statute that disqualified people who failed without good cause to accept suitable work when offered. The United States Supreme Court stated that the ruling of the South Carolina court forced the employee to choose between following the precepts of her religion and forfeiting benefits or abandoning the precepts of her religion in order to accept work. *Sherbert*, 374 U.S. at 404. "Governmental imposition of such a choice puts the same kind of burden upon the free exercise of religion as would a fine imposed against appellant for her Saturday worship." *Id.*

In her testimony before the Referee, the Petitioner, when asked how being fingerprinted went against her religious beliefs, replied:

> My father was a Christian Evangelist. […] In Revelations where it speaks of the mark of the devil to the head and the hands. […] We were brought up to believe that means tattoos and fingerprints. […] You know that's the way I was brought up. And that's the way I still believe today

6

that if I do this then I'm not going to get to go to Heaven because I'm marked – the mark of the devil.

(R.R. 31a.) Petitioner's situation is analogous to that of the employee in *Sherbert* as she is being forced to choose between following her religious beliefs and forfeiting benefits or abandoning her religious beliefs in order to comply with Employer's requirement. This imposition is a violation of Petitioner's constitutional right to free exercise of religion.

Petitioner further argues the Board erred when it determined her beliefs were personal and not religious. Petitioner was raised in a Christian Evangelist household but did not belong to a formal religion and asserts the Referee denied her benefits because her religious beliefs are not practiced in a formal setting. Petitioner claims that the formality, or lack thereof, of her religious beliefs does not change the fact that they are religious beliefs.

In order to qualify for First Amendment protection, a claimant's beliefs must be sincerely held and the beliefs must be "religious in nature, in the claimant's scheme of things." *Monroe v. Unemployment Compensation Board of Review*, 535 A.2d 1222, 1225 (Pa. Cmwlth. 1988)(quoting *Africa v. Commonwealth of Pennsylvania*, 662 F.2d 1025, 1030 (3d Cir. 1981)). "In determining whether or not a belief is sincerely held, we may not question the *truth* of a belief, but must determine whether or not that belief is truly held." *Id*. (emphasis in the original).

The Board found that Petitioner's beliefs were personal and not religious because the Petitioner, at the time of the hearing, indicated she is not a member of any formal, recognized or organized religion. (R.R. 37a.) The Board

7

concluded the beliefs were personal because she kept her religion quiet and only practiced in her home. *Id.*

The United States Supreme Court rejected the notion that to claim the protection of the Free Exercise Clause one must be responding to the commands of a particular religious organization. *Frazee v. Illinois Department of Employment Security*, 489 U.S. 829, 834 (1989). This Court cautioned in *Monroe* that the Court must avoid any predisposition toward conventional religions so that unfamiliar faiths are not branded as secular beliefs. *Monroe,* 535 A.2d at 1225.

Petitioner has represented that she associates with a Christian Evangelist religion she practices at home with her family. (R.R. 34a.) The Board discredited her religious claim based on the fact that she did not belong to what would be termed a conventional religion. (R.R. at 37a.) In light of this Court's decision in *Monroe*, the Board erred in classifying Petitioner's beliefs as personal and not religious.

Although not controlling, we are further persuaded by a recent decision of the U.S. Court of Appeals for the Fourth Circuit. In *U.S. Equal Employment Opportunity Commission [EEOC] v. Consol Energy, Inc.*, 860 F.3d 131 (4th Cir. 2017), the EEOC brought an action against an employer on behalf of a retired employee who had refused to submit to a biometric hand scan for religious reasons. According to the employee (who identified himself as "a life-long evangelical Christian"), "the Mark of the Beast brands followers of the Antichrist, allowing the Antichrist to manipulate them. And use of [employer's] hand-scanning system, [employee] feared, would result in being so 'marked'…" *Id.* at 137-138. The EEOC alleged that employer's failure to accommodate employee's religious beliefs by

8

providing an alternative to the hand scan resulted in a constructive discharge in violation of Title VII of the Civil Rights Act of 1964.[6] At trial, a jury returned a verdict in EEOC's (and thus employee's) favor. The employer appealed.[7]

In affirming, the Fourth Circuit recognized the importance of evaluating one's beliefs only for their sincerity: "It is not [the employer's] place as an employer, nor ours as a court, to question the correctness or even the plausibility of [employee's] religious understandings. *Consol*, 860 F.3d at 142. Although employee's own pastor disagreed with his beliefs about the "Mark of the Beast," the Court said that was irrelevant: "[Employee's] religious beliefs are protected whether or not his pastor agrees with them. … So long as there is sufficient evidence that [employee's] beliefs are sincerely held … and conflict with [employer's] employment requirement, that is the end of the matter." *Id*. at 142-43.

In the present case, the sincerity of Petitioner's beliefs was not at issue. The denial of benefits rested on the finding that these beliefs were personal and not religious in nature. Even if it were somehow proper for an employer (or governmental entity) to question the "religiosity" of one's beliefs, given that Petitioner stressed that her beliefs (like those of the *Consol* employee) were biblically rooted and dwelt on concepts such as "heaven," and "the devil," it is

---

[6] 42 U.S.C. §§ 2000e to 2000e-17.

[7] Irrelevant to the present matter, EEOC cross-appealed the district court's determination that precluded punitive damages.

9

difficult to comprehend how the Board determined them to be "personal" and not "religious."[8]  As such, the Board's decision cannot stand.[9]

For these reasons, the decision of the Board is reversed.

_____
JOSEPH M. COSGROVE, Judge

Judge Cohn Jubelirer did not participate in the decision of this case.
Judge Simpson concurs in the result only.

---

[8] In finding that "[t]he [Petitioner] is not a member of a <u>recognized</u> or <u>organized</u> religion," and basing its decision that Petitioner's beliefs were thus merely "personal" and not "religious," the Board fails to fulfill its duty to protect Petitioner's constitutional rights, in this case the First and Fourteenth Amendment right to free exercise of religion.

[9] Petitioner was willing to accept alternatives to the fingerprinting.  She testified as follows: "That's the only background check that I object to.  They can do anything else they want. […]  I'm willing to go with anything else they ask me to do with the exception of that [fingerprinting] because I really do believe if I let them do that I won't get into Heaven.  I believe that in my heart or we wouldn't be here today."  (R.R. 32a.)  No such accommodation was made available.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bonnie F. Kaite,                                  :
               Petitioner               :
                                                 :
          v.                                :
                                                 :
Unemployment Compensation          :
Board of Review,                              :    No. 851 C.D. 2016
               Respondent               :

## O R D E R

AND NOW, this 29th day of November, 2017, the April 28, 2016 Order of the Unemployment Compensation Board of Review is reversed.

_____
JOSEPH M. COSGROVE, Judge