IN THE COMMONWEALTH COURT OF PENNSYLVANIA

St. Luke's University Hospital,      :
           Petitioner      :
     :
       v.      :    No. 1170 C.D. 2023
     :
Unemployment Compensation      :    Submitted: September 9, 2024
Board of Review,      :
           Respondent      :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                 FILED: November 1, 2024

St. Luke's University Hospital (Employer) petitions for review of the September 20, 2023 Order of the Unemployment Compensation Board of Review (Board), which found Employer's former employee, Christine Puello (Claimant), eligible for benefits under Section 402(e)[1] of the Unemployment Compensation Law (Law), and reversed the decision of the Referee. Employer challenges the Board's determination that Claimant's sincerely-held religious beliefs conflicted with Employer's COVID-19 nasal swab testing policy. After careful consideration, we affirm.

_____

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

## I. Facts and Procedural History

Claimant began working for Employer as a part-time registered nurse on August 6, 2001. In August of 2021, Employer notified all employees that they were required to obtain a COVID-19 vaccination by September 25, 2021, or be approved for a medical or religious exemption. Employer further advised that employees approved for an exemption would be required to participate in weekly nasal swab testing for the virus. Claimant applied for and was granted a religious exemption from the vaccination requirement. In her August 20, 2021 application letter, Claimant explained that she is a Christian, that she believes in the Bible, and that her spiritual beliefs are not compatible with receiving the vaccine. (Reproduced Record (R.R.) at 139a.)

On October 4, 2021, Claimant informed Employer the nasal swab testing was also incompatible with her religious beliefs and that she was unwilling to submit to it. Specifically, Claimant explained:

> I am writing this letter to inform [Employer] that after long consideration I have decided to decline the COVID[-19] nasal swab weekly testing. **This decision is due to a conflict with my sincerely held religious beliefs**. Inserting a nasal swab with contaminants into my body violates my conscience and my sincerely held religious beliefs as I have previously described in my religious exemptions. I am willing to submit my saliva under observation for weekly COVID[-19] testing which eliminates any invasiveness and preserves my dignity of one less object/contaminant entering my body.

(R.R. at 146a) (emphasis added).

Employer advised Claimant by letter that she was required to participate in nasal swab testing and that it was the only reliable method of testing. (R.R. at 147a.) On October 14, 2021, Employer discharged Claimant for her refusal to participate in nasal swab testing.

2

Claimant filed for unemployment compensation (UC) benefits, but was determined to be ineligible to receive them by the UC Service Center under Section 402(e)[2] of the Law. Claimant appealed the Notice of Determination, and the Referee held a hearing at which she testified:

> [Q.] Okay. Specifically, why is it that you were unwilling in the swab testing?
>
> [A.] I was not willing to compromise the integrity of my mucus membranes and **most important my sincerely held religious beliefs** which is the integrity of my conscience and my soul.
>
> [Q.] And specifically, what does this belief prohibit in relation to this testing?
>
> [A.] It's an invasive procedure with a foreign object – possible foreign substances. That's a violation of the standard [inaudible] of my religion part of my relationship with God.
>
> [Q.] Okay. Do you participate in drug -- in -- did you participate in any type of prior vaccinations?
>
> [A.] **I had religious exemptions since 2018** for the flu vaccine and I do have a copy of that letter as well. They were aware of it, and they also gave me an exemption for that as well.
>
> [Q.] Did you participate in any type of blood tests?
>
> [A.] Not in a very long time.

---

[2] Section 402(e) of the Law provides that "[a]n employe shall be ineligible for compensation for any week . . . in which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is 'employment' as defined in this act[.]" 43 P.S. § 802(e).

(R.R. at 131a) (emphasis added). With respect to alternative methods of COVID-19 testing, Claimant indicated:

> [A.] Well, the [inaudible] information -- there's a ton of information out there that in May 2020 that Yale and Rutgers had studies for saliva testing . . . there were reliable saliva methods out here. There's literature out there to back it up. The [Centers for Disease Control] accepts saliva tests as well. . . . There are also reported adverse events where people have gotten the nasal swab, or the cotton swab stuck in their nose. They went to an [ear, nose and throat doctor]. They thought that they had gotten it all out. And there's a part stuck in the septum that had to go into surgical intervention. There are nosebleeds are a big -- mild side effect. And some --there's a study where the patient broke through the mucus membrane and had cerebral spinal which could lead to meningitis leaking from her nose.
>
> [Q.] Okay. So you have this correspondence with the Employer, did you and you continued to indicate that you were refusing to participate in the swab testing; is that right?
>
> [A.] Yes.

(R.R. at 132a.)

The Referee issued his decision on June 10, 2022, in which he concluded Claimant was ineligible for benefits under Section 402(e) of the Law. The Referee explained:

> In this case, the evidence shows that the employer discharged the claimant after she failed to comply with a directive to participate in weekly COVID-19 testing after being approved for a religious exemption to the COVID-19 vaccination. The evidence shows that the employer notified the claimant beginning on August 9, 2021, that employees would be required to be vaccinated to maintain their employment unless approved for an exemption. The Referee

4

finds it reasonable for the claimant to be required to be vaccinated or participate in weekly testing due to the nature of her employment, working with the public. The evidence shows that the claimant was approved for a religious exemption to the vaccination, however, the claimant refused to participate in nasal swab testing for COVID-19. In consideration of the testimony and evidence, the Referee finds that the employer offered the claimant a reasonable accommodation to her choice to avoid COVID-19 vaccinations for religious beliefs. The Referee finds that claimant has failed to show reasonableness for refusing to comply with the employer's directive to participate in the nasal swab testing for COVID-19. The Referee finds that the employer has shown that the claimant was discharged for insubordination, an act of willful misconduct in accordance with the law.

(Employer's Br., Ex. C at 76.)

Claimant appealed to the Board, which affirmed the Referee's decision by Order dated September 14, 2022. Claimant appealed to this Court, and on March 31, 2023, the Board requested, with Claimant's consent, that we remand the case. The Board averred that remand was necessary because "it would appear that the Board misapplied the law in rendering its decision and now desires to review its determination and issue a new decision, from which the aggrieved parties retain all appeal rights." (R.R. at 260a.) This Court remanded the case in accord with the Board's request.

By Decision and Order mailed September 20, 2023, the Board vacated its September 14, 2022 order, reversed the Referee's June 10, 2022 decision, and deemed Claimant eligible to receive UC benefits. In doing so, the Board relied on this Court's decision in *Kaite v. Unemployment Compensation Board of Review*, 175 A.3d 1132 (Pa. Cmwlth. 2017), for the proposition that an "[employee's] religious beliefs are protected . . . [s]o long as there is sufficient evidence that [her] beliefs are sincerely

5

held . . . and conflict with the [employer's] employment requirement, that is the end of the matter." *Id.* at 1137. The Boad explained its rationale as follows:

> The claimant was granted a religious exemption from obtaining the COVID-19 vaccine but was terminated for refusing the nasal swab testing for the same reason. The claimant credibly testified, "I was not willing to compromise the integrity of my mucus membranes and most importantly my sincerely held religious beliefs which is the integrity of my conscience and my soul. It's an invasive procedure with a foreign object—possible foreign substances. That's a violation of the standard [inaudible] of my religion part of my relationship with God." Notably, the claimant has had a religious exemption for the flu vaccine since 2018, does not permit her blood to be taken, and offered an alternative method of saliva testing, but the employer refused.
>
> Based on the foregoing, the Board finds the claimant's belief against an invasive procedure with a foreign object to be sincerely held and is religious in nature. While the employer had every right to terminate the claimant's employment for failing to follow its policy, the Board cannot find that the claimant committed willful misconduct such as to deny her unemployment compensation benefits.

(Employer's Br., Ex. A at 61.)

Employer filed a motion for reconsideration on October 5, 2023, in which it discussed applicable caselaw and argued that the Board's September 20, 2023 decision and reliance on *Kaite* was erroneous. (R.R. at 216a.) By order mailed October 20, 2023, the Board denied Employer's motion for reconsideration and stated that its order issued on September 20, 2023 stands as final. This appeal followed.[3]

---

[3] "This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence" *Rivera v. Unemployment Compensation Board of Review*, 310 A.3d 348, 352 n.4 (Pa. Cmwlth. 2024). In UC cases, the Board is the ultimate finder of fact and it resolves **(Footnote continued on next page…)**

6

## II. Issues

On appeal, Employer challenges the Board's determination that Claimant is eligible to receive UC benefits, where her refusal to submit to nasal swab testing for COVID-19 amounted to willful misconduct. According to Employer, Claimant's objections to the testing requirement were based on medical and personal autonomy concerns, rather than on any sincerely-held religious belief. (Employer's Br., at 21-49.) Employer additionally argues, from a procedural standpoint, that the Board erred in failing to provide it with notice of its intention to reconsider and reverse its original order, thereby depriving it of the opportunity to adequately present its position to the Board. *Id.* at 50-54.

## III. Discussion

### A. Claimant's Eligibility to Receive UC Benefits

As noted, Employer first contends that Claimant is disqualified from receiving UC benefits where she failed to establish a sincerely held religious belief that conflicted with the nasal swab testing requirement. Employer characterizes the Board's interpretation of this Court's holding in *Kaite* as oversimplistic, in that it accepted Claimant's unsupported claims regarding her religious beliefs at face value.

Pursuant to Section 402(e) of the Law, a claimant is ineligible for UC benefits when an employer discharges her for willful misconduct. Although the term "willful misconduct" is not defined in the statute, appellate courts interpret it as: "(a) wanton or willful disregard for an employer's interests; (b) deliberate violation of an employer's rules; (c) disregard for standards of behavior which an employer can rightfully expect of an employee; or, (d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations." *Klampfer v.*

issues of credibility. *Id.* However, whether or not an employee's actions amount to willful misconduct is a question of law. *Id.*

7

*Unemployment Compensation Board of Review*, 182 A.3d 495, 499 (Pa. Cmwlth. 2018). "An employer seeking to prove willful misconduct by a policy violation must demonstrate the existence of the policy, its reasonableness, and its violation." *Brown v. Unemployment Compensation Board of Review*, 276 A.3d 322, 327 (Pa. Cmwlth. 2022). While the employer bears the initial burden of proving the existence of the work rule and its violation, the burden then shifts to the claimant to prove that the violation was for good cause. *Kaite*, 175 A.3d at 1134.

Here, the Board does not challenge the reasonableness of Employer's policy and openly acknowledges "there is no dispute that a COVID-19 vaccine and/or swab testing, in the context of Claimant's employment at a hospital, was reasonable, was communicated to Claimant, and Claimant refused." (Board's Br. at 8.) Instead, relying on *Kaite*, the Board contends that Claimant had good cause to refuse Employer's directive because of her sincerely-held religious belief against foreign objects entering her body. *Id.* at 7.

We begin by observing that the First Amendment to the United States Constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" U.S. Const. amend. I. "Where the state denies [UC] benefits because of conduct mandated by a religious belief, putting substantial pressure on a person to modify behavior and violate that belief, a burden upon religion exists." *Kaite*, 175 A.3d at 1134. "The burden that a denial places on a claimant's right to free exercise must be sufficiently compelling to override the claimant's First Amendment rights." *Id.* A claimant's refusal to comply with an employer's requirement that is in opposition to her religious beliefs can constitute good cause for violating that policy. *Id.* at 1135.

8

"In the free exercise area, two threshold requirements must be met before particular beliefs may be accorded First Amendment protection. First, the beliefs avowed must be sincerely held, and second, the beliefs must be religious in nature, **in the claimant's scheme of things**." *Monroe v. Unemployment Compensation Board of Review*, 535 A.2d 1222, 1225 (Pa. Cmwlth. 1988) (emphasis added). In determining whether a belief is sincerely held, **we may not question the truth of a belief**, but must determine whether that belief is truly held. *Id.* (emphasis added). Moreover, we must "avoid any predisposition toward conventional religions so that unfamiliar faiths are not branded mere secular beliefs," which do not fall within the ambit of First Amendment protection. *Id.*

In *Kaite*, we considered whether the claimant had good cause for violating her employer's fingerprinting requirement as part of its background check policy, which she averred conflicted with her sincerely-held religious beliefs. The claimant informed the employer it was against her religious beliefs to be fingerprinted and asked if she could submit to a different form of background check that did not involve fingerprinting. The claimant testified she was raised to believe that any marking on the hands or head is the mark of the devil and will prevent her from getting into heaven. She stated she was "willing to do anything else they ask me to do with the exception of [fingerprinting] because I really do believe I won't get into heaven." *Kaite, 175 A.3d at 1135*. The Board determined that the claimant was ineligible to receive UC benefits because she did not have good cause for violating the fingerprinting requirement. On appeal, we reversed the Board's decision and in doing so "recognized the importance of evaluating one's beliefs only for their sincerity" and noted "it is not the employer's place as an employer, nor ours as a court, to question the correctness or even the plausibility of employee's religious understandings. . . . So long as there is

9

sufficient evidence that employee's beliefs are sincerely held and conflict with employer's employment requirement, that is the end of the matter." *Id.* at 1137 (brackets omitted).

Similarly here, the record reflects that Claimant's religious beliefs against invasive procedures are sincere and long held, as she has consistently refused the flu vaccine for religious reasons and does not participate in blood draws. When Claimant learned of Employer's COVID-19 vaccine policy, she immediately objected to it solely on religious grounds, and Employer granted her an exemption. However, when Claimant voiced this same objection to the nasal swab testing and offered to submit to saliva testing, which she viewed as a non-invasive alternative, Employer rejected this proposal.

Although Employer attempts to frame Claimant's objection to the swab testing as merely secular and not religious in nature, the record does not support this characterization. Claimant's written notification to Employer addressing the testing requirement referenced only the policy's "conflict with [her] sincerely held religious beliefs." (R.R. at 146a.) Likewise, Claimant consistently testified that her objection was based on "a violation of [her] religion part of her relationship with God." (R.R. at 131a.) While Claimant did cite safety concerns as a **secondary reason** for refusing nasal swab testing, the record makes clear that her primary objection was religious and not secular in nature. The Board credited Claimant's testimony that this method of testing was prohibited by the tenets of her religion and determined she had good cause to refuse it. Upon consideration of the record before us, we discern no error in the Board's disposition of this issue.

**B. Lack of Notice of Board's Reconsideration of its Order**

10

Employer next contends the Board failed to provide it with notice of its intent to reconsider and vacate its September 14, 2022 decision, in which it initially – and correctly– denied UC benefits to Claimant. Employer maintains that, had it been provided with adequate notice, it could have addressed the Board's misapplication of the law and its misinterpretation of the *Kaite* case in light of the facts of the instant case. (Employer's Br., at 50-53.)[4]

While we agree with Employer that it should have been made aware of the remit request, any error made in this regard was minor and would not have changed the outcome of these proceedings. Employer has fully addressed its position concerning Claimant's eligibility to receive UC benefits before the Board and on appeal. Accordingly, we affirm the order of the Board.

_____
PATRICIA A. McCULLOUGH, Judge

---

[4] Specifically, Employer briefly references Pennsylvania Rule of Appellate Procedure 121(b) ("**Service of all papers required.** Copies of all papers filed by any party and not required by these rules to be served by the prothonotary shall, concurrently with their filing, be served by a party or person acting on behalf of that party or person on all other parties to the matter. Service on a party represented by counsel shall be made on counsel."); and 34 Pa. Code § 101.53 ("Mailing of notices, orders or decisions of a referee, or of the Board to the parties at their last known addresses, or issuance by electronic transmission when permitted by law and this chapter, as furnished by the parties to the referee, the Board or the Department [of Labor and Industry], shall constitute notice of the matters therein contained.")

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

St. Luke's University Hospital,          :
                          Petitioner     :
                                         :
          v.                             :     No. 1170 C.D. 2023
                                         :
Unemployment Compensation                :
Board of Review,                         :
                          Respondent     :

# ***ORDER***

AND NOW, this 1st day of November, 2024, the September 20, 2023 Order of the Unemployment Compensation Board of Review is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge