DECISION
Appellant, Brett Dupuy, appeals from a judgment of the Franklin County Court of Common Pleas, affirming a decision of the Ohio Bureau of Employment Services Review Commission ("review commission") denying appellant's claim for unemployment benefits.
On March 27, 1997, appellant quit his employment with Tee Jaye's Country Place ("Tee Jaye's"). Appellant subsequently filed a claim for unemployment benefits. As part of his claim application, appellant submitted a "claimant's statement" setting forth facts concerning his reason for leaving his employment with Tee Jaye's. Appellant's statement set forth the following facts:
 I FELT UNDER TOO MUCH PRESSURE AND TOO MANY MGRS TRYING TO TELL ME HOW TO DO THE JOB. ALSO, WHEN 2 MGRS WERE ON DUTY, ONE WOULD TELL ME ONE THING TO DO. WHEN I GOT TO THAT ASSIGNMENT AND JUST STARTED IT, THE OTHER MGR WOULD COME OVER AND TELL ME SOMETHING ELSE TO DO. (IN OTHER WORDS DROP WHAT I WAS CURRENTLY DOING, EVEN IF THE JOB WASN'T FINISHED!) THIS LED TO A LOT OF FRUSTRATION FOR ME AS I'M TRAINED TO "FINISH ONE JOB B4 STARTING THE NEXT DUTY[.]"
 I ALSO FELT THEY WERE A BIT UNFAIR WITH THE JOB. (THE GUY WHO HAD BEEN THERE WITH ME ALWAYS COMPLAINED TO ME BUT I NEVER COMPLAINED ABOUT THE JOB MYSELF TO THE MANAGEMENT.) THIS IS NOT A REASON FOR LEAVING. JUST AN EXTRA FACT I THOUGHT YOU MIGHT NEED TO KNOW ABOUT.
 I THINK ANOTHER REASON THAT THEY MIGHT BRING TO YOUR ATTN IS DUE TO RELIGIOUS REASONS. I TRIED TO GET OFF GOOD FRIDAY, PALM SUNDAY, AND EASTER SUNDAY FOR RELIGIOUS REASONS AND THEY TOLD ME THEY COULDN'T GIVE ME ALL 3 DAYS OFF. SO I WORKED PALM SUNDAY ASSUMING THEY WERE GIVING ME GOOD FRIDAY AND EASTER OFF. WHEN I SAW THEY SCHEDULED ME I FELT IT WAS AGAINST MY FAITH TO WORK ON THESE HOLY DAYS AND TOLD THEM I QUIT HOLY THURSDAY SO I WAS ABLE TO ATTEND RELIGIOUS EVENTS.
Appellee, the Ohio Bureau of Employment Services, initially allowed appellant's claim for benefits for the week ending April 5, 1997, based on a determination that "the claimant quit with just cause." Tee Jay's requested reconsideration of the decision to allow benefits and, by decision mailed June 17, 1997, the administrator for appellee determined that appellant quit his work with Tee Jay's without just cause. Thus, the administrator disallowed the claim for the week ending April 5, 1997.
On July 1, 1997, appellant filed an appeal with the review commission. A hearing was conducted on August 20, 1997. The following facts were adduced at the hearing. Tee Jaye's employed appellant for the period from February 7, 1997 through March 27, 1997. Appellant's duties included dishwashing and bussing tables.
Appellant testified that he quit his employment at Tee Jaye's because "I wanted to transfer to another job with Kroger's." (Tr. 5.) Appellant stated that he "tried to give Tee Jayes two weeks notice and then when that was supposed to be over, the two weeks, I planned to start in one week at Kroger's. There was going to be one week between jobs." (Tr. 8.)
Appellant, who is Catholic, also cited religious reasons for leaving Tee Jaye's. More specifically, the facts indicated that Palm Sunday, Good Friday and Easter all fell within appellant's last two weeks of employment with Tee Jaye's. Appellant asked for these three days off but was told by his supervisor that he could not get time off because these were extremely busy times for the employer. Appellant worked Palm Sunday and then further requested to not work on Good Friday and Easter. When his request to have those days off was denied, appellant left work on March 27, 1997, which was Holy Thursday.
When asked by the hearing officer whether he was able to attend mass on Palm Sunday, appellant responded that he "went to mass before work" that day. (Tr. 6.) When asked whether he could have gone to mass on Good Friday and Easter Sunday either before or after work, appellant replied, "I guess I just didn't think about that." (Tr. 7.)
Appellant stated that, while he asked his supervisor for those days off, he did not put the request in writing. When asked why he did not make a written request, appellant stated, "I did not think about it at the time." (Tr. 8.) Appellant explained that he worked Palm Sunday "with the understanding that they might give me Easter off." (Tr. 9.) He further stated, however, "I really was not expecting Good Friday off." (Tr. 9.)
Appellant stated that the reason he was given for not getting those days off work was because "they were going to be really busy." (Tr. 12.) He was also told that he could not get time off "because they would have to give it [to] all the employees." (Tr. 6.) Appellant testified that, when he was first hired at Tee Jaye's, "I did not say anything about being off for holy days because at the time I needed to work and I needed a job." (Tr. 12.)
Beverly Gardner, a shift manager at Tee Jaye's, also testified at the hearing. Gardner testified that the normal company policy for receiving time off is to "put the notice in writing." (Tr. 14.) Written notices are to be placed in a designated pouch in the office. Gardner stated that the company attempts to schedule workers "off according to business. Weekends and holidays are a priority." (Tr. 15.) She stated that requests are frequently turned down if heavy business is anticipated.
The hearing officer for the review commission issued a decision, mailed on August 25, 1997, finding that appellant quit his work without just cause. Thus, the decision of the administrator on reconsideration, mailed June 17, 1997, was affirmed. Appellant filed objections to the hearing officer's decision. The review commission mailed a decision on November 14, 1997, disallowing appellant's application to institute a further appeal.
On December 12, 1997, appellant filed an appeal with the trial court from the November 14, 1997 decision of the review commission. The trial court filed a decision on September 9, 1998, affirming the decision of the review commission.
On appeal, appellant sets forth the following single assignment of error for review:
 The Common Pleas Court committed error and abused its discretion by affirming the erroneous and unreasonable determination of the administrative agency that claimant quit his employment without just cause in connection with work, and by failing to find that the decision of the Review Commission was unlawful, unreasonable, and/or against the manifest weight of the evidence of record.
Under his single assignment of error, appellant contends that the review commission's determination that he quit his job without just cause is not supported by credible evidence.
In the present case, appellant was denied unemployment benefits on the basis of R.C. 4141.29(D) (2) (a), which provides that benefits may not be paid to an individual who has "quit work without just cause." In general, the purpose of the Unemployment Compensation Act is "* * * `to provide financial assistance to an individual who had worked, and was able and willing to work, but was temporarily without employment through no fault or agreement of his own.'" Irvine v. Unemployment Comp. Bd. of Review (1985),19 Ohio St.3d 15, 17, quoting Salzl v. Gibson Greeting Cards
(1980), 61 Ohio St.2d 35, 39. In Irvine, the Ohio Supreme Court noted that:
 The term "just cause" has not been clearly defined in our case law. We are in agreement with one of our appellate court's that "[t]here is, of course, not a slide-rule definition of just cause. Essentially, each case must be considered upon its particular merits. Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." Irvine, supra, at 17, quoting Peyton v. Sun T.V. (1975), 44 Ohio App.2d 10, 12.
Thus, "[t]he determination of whether just cause exists necessarily depends upon the unique factual considerations of the particular case." Irvine, supra, at 17. The Ohio Supreme Court has held that "[a]n appellate court may reverse the Unemployment Compensation Board of Review's `just cause' determination only if it is unlawful, unreasonable or against the manifest weight of the evidence." Tzangas, Plakas Mannos v. Ohio Bur. of Emp. Serv.
(1995), 73 Ohio St.3d 694, paragraph one of the syllabus. Further, "appellate courts are not permitted to make factual findings or to determine the credibility of witnesses." Id. at 696.
In the present case, the review commission hearing officer set forth the following reasoning in support of a finding that appellant quit his work with Tee Jaye's without just cause:
 The claimant had originally notified his employer at Tee Jaye's Country Place that he was leaving because of another job offer. When an individual quits work to accept other employment it constitutes a quit without just cause.
 Before the claimant worked out his notice he quit his employment because Tee Jayes Country Place would not allow him off work on Good Friday and Easter Sunday. When the claimant was first hired by Tee Jayes Country Place, he made no mention of his religion or religious convictions. The claimant did not inform the employer at the time of hire that he would need any holy days off as a result of his religious beliefs. The claimant had worked on holy days and had merely attended mass during non-working hours. The claimant could have also attended mass during non-working hours on Good Friday and Easter Sunday. The claimant has failed to establish a religious conviction which would have necessitated his resigning his employment.
Appellant, in his brief, notes that the hearing officer found that appellant quit his job without just cause and, further, that cutting the two-week notice short caused the interim between the end of the employment with Tee Jaye's and the start of the new position to exceed the statutory seven day period, thereby failing to remove the disqualification. Appellant "does not find fault with this limited determination, * * * so far as it goes." Appellant argues, however, that the underlying quit was justified on the basis that the employer's "action, or inaction," denied appellant the ability to practice his religion in a manner he saw fit, thus resulting in a First Amendment violation.
In the present case, the trial court, in affirming the decision of the review commission, noted that "[t]he Hearing Officer and the Review Commission determined factually, that Appellant had not informed his employer of such religious convictions and had failed to establish a religious conviction that would justify quitting his job." The court concluded, based on a review of the record, that the review commission's decision was not in error.
Upon review, we agree with the trial court's determination that the evidence in the record supports the decision of the review commission. The review commission's findings of fact indicate that appellant, during his employment at Tee Jaye's, received a job offer from Kroger, prompting appellant to give Tee Jaye's a two week notice. Further, during the period of this notice, appellant "requested to have off work on Palm Sunday, Good Friday and Easter Sunday." After working Palm Sunday, appellant made a second request to have Good Friday and Easter off work. When appellant's request was turned down, appellant "informed his employer that he would have to quit his employment immediately," and he "then left work on March 27, 1997, which was Holy Thursday." The commission's findings of fact also provide that appellant "would normally attend mass during hours he was not working at Tee Jayes." Specifically, the commission found that appellant "normally worked during the evening shift and could have attended mass during the day."
Appellant contends that his employer's actions were based on "whim and caprice" and that they left appellant to "feel that he had no choice but to quit to honor his religious beliefs." Appellant also contends that he did all that he could have to provide his employer "notice of the problem and an opportunity to accommodate his needs." We are not persuaded by appellant's argument.
A review of the record indicates that, at the time appellant began working for Tee Jaye's, he did not give his employer any indication that he had religious scruples which prohibited him from working on particular days. Further, while appellant subsequently requested certain days off for religious reasons, the record does not indicate that the employer was aware that, not only did appellant wish to attend religious services, but that his religion required him to absolutely abstain from servile work on those days. Rather, the record indicates that appellant worked on Palm Sunday while still attending mass that morning before reporting to his place of employment. Appellant also acknowledged that he did not expect to get off of work for Good Friday. When asked during the hearing whether he could have gone to mass on Good Friday and Easter Sunday either before or after work, appellant responded, "I guess I just didn't think about that." (Tr. 7.) Thus, as noted by appellee, at the time of the hearing, appellant did not express any conscientious objection or religious reason for abstaining from any type of servile work.
The record further indicates that only after the hearing, at the time appellant filed objections to the hearing officer's report, did appellant raise this issue. Specifically, attached to appellant's objections was a letter from the Reverend John J. Blazek. In the letter, Reverend Blazek indicates that, in an attempt to "clarify this matter even further, the law of the Catholic Church states that Sundays and Holy Days should be observed, not only by attending Church, but also by abstaining from `servile work.'" However, appellant's belated attempt to clarify this issue after the hearing does not provide evidence that, at the time appellant quit his job, the employer was ever given an opportunity to make an accommodation based on the reason stated above.
We are cognizant that the United States Supreme Court has held that "a State could not `constitutionally apply the eligibility provisions [of its unemployment-compensation program] so as to constrain a worker to abandon his religious convictions respecting the day of rest.'" Frazee v. Illinois Dept. ofEmployment Sec. (1989), 109 S.Ct. 1514, 1516. However, it had also been held that "`[a]n employee's failure to inform his employer of his religious needs and to assist in the accommodation process may be fatal to the right of the employee to have his beliefs accommodated by his employer and may constitute a waiver of such right.'" Shapiro-Gordon v. MCI Telecommunications Corp.
(S.D.N.Y. 1993), 810 F. Supp. 574, 579, quoting State Division ofHuman Rights v. Rochester Products (1985), 112 A.D.2d 785. Even assuming a conflict between appellant's religious belief and an employment practice, the trial court did not err in affirming the decision of the review commission based on the court's determination that appellant "had not informed his employer of such religious conviction." See, e.g., Monroe v. Unemp. Comp. Bd.of Review (Pa.Comwlth. 1988), 535 A.2d 1222, 1225 ("If a claimant meets her burden of proving that her actions, i.e. quitting her job, were due to religious beliefs which were sincerely held, then she must also show that she informed her employer of those beliefs").
Because the trial court did not err in holding that the evidence supported the review commission's decision, appellant's single assignment of error is overruled and the judgment of the trial court is hereby affirmed.
Judgment affirmed.
BRYANT and TYACK, JJ., concurs.